**AMERICAN SAMOA GOVERNMENT, Plaintiff**

**v.**

**ROGER ISAIA and SAUFO'I ALOPEPE, Jr., Defendants**

High Court of American Samoa
Trial Division

CR No. 66-95

March 28, 1996

Before RICHMOND, Associate Justice, TAUANU'U, Chief Associate Judge, and LOGOAI, Associate Judge

Counsel:     For Plaintiff, Frederick J. O'Brien, Assistant Attorney
             General
             For Defendant Roger Isaia, David P. Vargas, Assistant
             Public Defender
             For Defendant, Saufo`i Alopepe, Jr., Barry I. Rose

Order Granting Motion to exclude Evidence in Part and Requiring Notice of Intention to Use Evidence at Trial:

## I.     INTRODUCTION

Defendants Roger Isaia has been charged with two counts of criminal assault in the first degree, and defendant Saufo`i Alopepe, Jr. has been jointly charged with the first count.   The crime is alleged to have

occurred on October 20, 1995. On November 6, 1995, the defendants were arraigned in this court.

On November 8, 1995, the defendants served on the government their request for discovery, favorable evidence, and intention to use evidence at trial.[1] Plaintiff American Samoa Government has not filed any notice of its intention to use evidence at trial. On November 1, 1995, however, before the defendants' request and before their arraignment, the government had presented the defendants with a copy of an investigation report prepared by the government's Department of Public Safety ["DPS"]. The government made no further responses to the defendants' discovery request until February 6, 1996, when it provided the defendants with a number of alleged witness statements.

Trial had been scheduled for February 20, 1996, but on February 8, Isaia, believing that he needed more time to investigate the witness statements given him by the government, stipulated with the government to continue the case. Alopepe claimed that he was prepared to proceed to trial, but on February 14, he also stipulated to the continuance, explicitly preserving his right to a speedy trial. On February 15, we continued the trial until April 2, 1996.

The government conducted a number of interviews with witnesses after February 6, 1996. Most of these interviews took place between February 12 and 15, although four of the interviews did not occur until March 19 and 20. Along with the interviews, police apparently presented the witnesses with mug photographs, which included the defendants and other suspects, for identification purposes. None of this information was given to the defendants until March 22, 11 days before trial, when the government presented the defendants with the "Criminal Investigation Follow-up: Country Club Case" ["the report"]. The report summarizes the statements of the 11 witnesses interviewed between February 12 and March 20, and includes the results of the witnesses' "photo identifications" of suspects. On March 25, Alopepe, this time feeling he had inadequate time to prepare for trial in light of this information, filed a motion to exclude all evidence related to the report, and to compel the government to provide notice of its intention to use evidence at trial. Isaia joined in Alopepe's motion on March 26. The matter was brought for expedited hearing on March 27, with all counsel present, the defendants having waived their right to be present.

---

[1] This date actually represents the date that Alopepe served his request on the government. Isaia joined Alopepe's present motion without filing a separate recitation of the facts for his case, and his original discovery request, if any, in not on file. However, we will assume for purposes of this motion that all dates applying to Alopepe also apply to Isaia.

225

## II. DISCUSSION

### A. Notice of Intention to Use Evidence at Trial

■ T.C.R.Cr.P. 12(d)(2) implicitly allows a defendant to request that the government provide him with a list of the evidence it intends to use at trial for its case in chief. However, Rule 12(d)(2) is not explicitly mandatory, except for a defendant's discovery of items listed in T.C.R.Cr.P. 16(a). Nor is a sanction provided.

Rule 12(d)(2), as with all of our rules of procedure, is based upon the parallel federal rule. *Compare* T.C.R.Cr.P. 12(d)(2), *with* F.R.Cr.P. 12(d)(2). Thus, the history and interpretation of the federal rules are strongly persuasive in interpreting our own rules. *See* A.S.C.A. § 46.0501 (stating that the criminal procedure in the High Court "shall conform as nearly as may be practical to the Federal Rules of Criminal Procedure"); *Fanene v. American Samoa Government*, 4 A.S.R. 957 (1968) (same). The notes of the Advisory Committee for the Federal Rules states that:

> No sanction is provided for the government's failure to comply . . . because the committee believes that attorneys for the government will in fact comply and that judges have a way of insuring compliance.

1 CHARLES A. WRIGHT, FEDERAL PRACTICE AND PROCEDURE § 197, at 736 n.1 (1982). Thus, the court has discretion to determine whether and how to order the government to comply.

■ The purpose underlying Rule 12(d) is to allow a defendant to effectively prepare for trial. Among other things, it allows the defendant to bring pre-trial motions under Rule 12(b)(3), to suppress evidence that will be entered at trial, and to avoid such motions for evidence the government does not intend to introduce. Producing notice of intention to introduce evidence can potentially save the defense attorneys, the government, and this court time and money. It is also in-line with the prosecutor's duty to seek justice rather than mere victory. *See Berger v. United States*, 295 U.S. 78, 88 (1935); *see also* ABA/BNA LAWYERS' MANUAL ON PROFESSIONAL CONDUCT § 61:602-03 (1986). For all these reasons, we believe the government should normally provide notice of its intention to use evidence, either on its own initiative, *see* T.C.R.Cr.P. 12(d)(1), or upon the request of defense counsel. *See* T.C.R.Cr.P. 12(d)(2). In appropriate cases, where the government has failed to comply with a defendant's request, we will compel compliance.

226

We will require the government to comply with the defendants' request in this case. Had it done so in a timely manner, the defendants would have a better idea how the government intends to use the information contained in the recently-disclosed report. Although the government need not make known its trial strategies or other privileged matters, the defendants could not even know whether the present motion to exclude evidence was necessary, since they did not know which, if any, of the witnesses interviewed in the report the government intends to call at trial. Such notice, even at this late date, can help to avoid such further confusion. Because trial is set to commence in six days, the government shall serve its notice of intention to use evidence no later than Friday, March 29, 1996.[2]

## B. Motion to Exclude Evidence

## 1. The Report

The crux of the defendants' motion is to exclude the evidence contained in the report. They make two arguments for its exclusion. First, they argue that the statements and identifications contained in the report were acquired after Isaia and the government had agreed to a continuance. Second, they argue that the government is "forcing" continuances in the trial, and could do so indefinitely.

The first argument is almost wholly without merit. Although Isaia and the government stipulated to a continuance on February 8, and Alopepe agreed on February 14, this does not change the fact that the original trial was scheduled for February 20. Thus, the statements and identifications which the government took between February 12 and 15 should not be characterized as having been "obtained by the government after the government . . . had agreed to continue the trial . . . ." (Def.'s Mot. Exclude Evidence at 3). Instead, the statements should be characterized as having been obtained two weeks prior to the initial trial date. Even if these statements were obtained shortly before trial, there is no rule requiring the government to finish its investigation at an early date, let alone a date convenient to the defendant. There is also no rule requiring the government to stop preparing for trial once a continuance has been granted. Even the statements obtained on March 19 and 20 may merely

---

[2] If the government and the defendants stipulate to continue the trial, or the court grants a continuance, the government may request additional time to serve it notice of intent to use evidence. However, because the government is supposedly prepared to begin trial in six days, and Alopepe has not waived his right to a speedy trial, such an extension will be short.

reflect a shifting of priorities or deadlines by the government once the trial had been continued to April 2.

Defendants' second argument focuses on the fact that the government, having failed to respond to the defendants' discovery request, produced statements on February 6, only shortly before trial, in effect "forcing" the defendants to seek a continuance to investigate the new evidence. The defendants claim that the production of the report on March 22 marks the second time that the government has produced evidence in the eleventh hour, apparently surprising the defendants and leaving them unprepared for trial on April 2.

What the defendants' argument ignores, however, is that they had no right to the report in the first place.[3] T.C.R.Cr.P. Rule 16(a)(1)(C) allows a defendant to discover any documents or tangible things within the possession custody or control of the government which may be material to the preparation of his defense or which the government intends to use in its case in chief. However, Rule 16(a)(2) provides that

> [T]his rule does not authorize the discovery or inspection of reports, memorandum [sic], or other internal government documents made by the attorney for the government or other government agents in connection with the investigation or prosecution of the case, or of statements made by government witnesses or prospective government witnesses.

The report certainly qualifies as either statements made by government witnesses or, more likely, as a document made by a government agent in connection with the investigation of the case. Thus, the defendants had no right to discover the report under Rule 16.[4]

The defendants also had no right to discover the report under *Brady v. Maryland*, 373 U.S. 83 (1963). *Brady* requires the government to disclose evidence favorable to a defendant upon request. The defendants have not claimed that the report is favorable to them, and it does not appear to favor them.

---

[3] The same is probably also true of the statements which the government supplied to the defendants on February 6, 1996.

[4] Under F.R.Cr.P. Rule 26.2, the defendants could have required the government to produce witnesses statements once those witnesses had testified on direct examination. However, despite this rule's obvious benefits regarding justice, there is no similar provision in our criminal rules.

Having been under no obligation to supply the report to the defendants, the government cannot be faulted for having done so at a late date. Except as discussed below, the evidence identified in the report will not be suppressed.

## 2. The photographs

One of the major areas of the defendants' concern, as expressed during the hearing, is the use of the photo identifications, apparently obtained using DPS photographs, listed in the report. Although the government has not prevented the defendants from viewing the photographs since they received the report on March 22, there have been problems obtaining useful copies for the defendants.

■ T.C.R.Cr.P. 16(a)(1)(C) allows the discovery of "books, papers, documents, photographs, tangible objects, buildings or places." Rule 16(a)(2) excludes the discovery of only "reports, memorandum [sic], or other internal documents." Rule 16(a)(2) does not explicitly exclude photographs from being discovered. Photographs are neither reports nor memoranda. Furthermore, because photographs and documents are listed separately in Rule 16(a)(1)(C), we must assume that they are mutually exclusive. Thus, photographs do not appear to implicitly fall under the confines of Rule 16(a)(2) either.

Were all categories of tangible objects in Rule 16(a)(1)(C) meant to be excluded, Rule 16(a)(2) could have parroted that list or said simply "all items discoverable under Rule 16(a)(1)(C)." It does not, however, do this. Furthermore, the purpose underlying Rule 16(a)(2) is to protect the work product of government attorneys. *See* 2 WRIGHT, *supra,* § 254, at 70 n.33. It is hard to imagine when photographs or other tangible objects, which are not reports, memoranda, or documents, would qualify as privileged work product. Thus, photographs continue to be discoverable despite the prohibition of Rule 16(a)(2).

The defendants are still required to show that the photographs are either material to the preparation of their defense or are intended to be used in the government's case in chief. *See* Rule 16(a)(1)(C). However, we believe the defendants have met this burden. Although it is unclear whether the government plans to introduce the photos during its case in chief, they have used them repeatedly to achieve identifications of the suspects from witnesses interviewed in the report. These photographs should have been made available to the defendants so that they could prepare a defense to the identification evidence. The lateness of their production is prejudicial to the defendants.

229

Although the government's counsel turned over the report (although apparently not the photographs themselves) as soon as it was given to him by DPS, this does not excuse the tardiness. "The government" which is required to disclose documents under Rule 16 is not limited to only the Attorney General's office. DPS is clearly part of the government, and tangible objects in its possession are discoverable. When a defendant serves a discovery request upon the government, the Attorney General is responsible for ensuring that any material documents in DPS's possession, or any other relevant government agency, are disclosed promptly and properly.

Because the photographs should have been disclosed as early as February 12, 1996, but were not in fact disclosed until March 22--10 days before trial--we will suppress them. The evidence suppressed includes not only the photographs but also any evidence relating to their use in making identifications of the defendants during the government's investigation.

### III. CONCLUSION

The government is ordered to serve upon defendants a notice of evidence to be used at trial by Friday, March 29, 1996. The photographs used by the government in its investigation and any related evidence will be suppressed.

It is so ordered.